UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2001 JAN 24 A 10: 37

| | |
|---|---|
| ROBERT KANE, Individually and On Behalf of All Other Persons Similarly Situated, ) ) ) ) ) | |
| Plaintiff, ) ) | C. A. No.00-40185-NMG |
| v. ) ) | |
| GAGE MERCHANDISING SERVICES, INC., ) AHL SERVICES, INC., and ARGENBRIGHT, INC., ) ) ) | |
| Defendants. ) ) | |

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION FOR LEAVE TO GIVE NOTICE OF THE PENDENCY OF THIS ACTION TO ALL CLASS MEMBERS

Plaintiff respectfully submits this memorandum of law in reply to the Defendants' opposition to Plaintiff's motion for leave to give notice of the pendency of this action to all class members.

I.   **Plaintiff Has Met the Preliminary Threshold Showing for Court Authorized Notice Under Either of the Two Lines of Authority Discussed in Defendants' Memorandum**

Relying on the Affidavit of Gary Russell, the Senior Vice President, Operations for Defendant Gage Merchandising Services, Inc., Defendants argue that Plaintiff is not entitled to give notice of this action to any other Crew Coordinators employed by them

14

because Plaintiff has failed to make "a threshold showing" that the persons he seeks to represent are "similarly situated" to him. However, Mr. Russell's Affidavit, read together with the Reply Affidavits of the Plaintiff and Thomas V. Urmy, Jr., establish precisely the contrary: that there exists a group of some 50 Crew Coordinators employed by the defendants who **are, in fact, similarly situated** to the Plaintiff and whom Plaintiff may represent under either of the legal tests discussed in Defendants' Memorandum.

Mr. Russell concedes in paragraph 5 of his Affidavit that during the relevant period Defendants' Crew Coordinators fell into one of two categories: persons who "are considered exempt [from the FLSA's overtime requirements] and are paid a salary" and persons who "are considered nonexempt and [are] paid on an hourly basis, including overtime as required." Plaintiff, says Mr. Russell, falls in the first group (Russell Affidavit, ¶6). Thus, Defendants have conceded that there exists a group of Crew Coordinators which is similarly situated to the Plaintiff.

The Reply Affidavits of Mr. Urmy and the Plaintiff provide further detail. Mr. Urmy's Affidavit recounts a conversation which he had with counsel for the Defendants on January 12, 2001, in which counsel advised him that there exist approximately 50 Crew Coordinators employed by the Defendants who have been treated by the Defendants as exempt. (Urmy Reply Affidavit, ¶4). The Plaintiff's Reply Affidavit goes even further: he identifies 51 persons (including himself) who were or are employed by Defendants as Crew Coordinators, working on defendants' contract with CVS

(Plaintiff's Reply Affidavit, ¶2 ). Plaintiff avers that he was told by Defendants' manager for the CVS contract that — like the Plaintiff — none of the other Crew Coordinators working on the CVS contract were paid overtime, because CVS refused to compensate the Defendants for any overtime wages paid to the Crew Coordinators. (Plaintiff's Reply Affidavit at ¶3).

These facts establish that Plaintiff has more than carried his burden of showing the existence of a similarly situated group of persons.[1] Notice to those persons is appropriate under either of the two "lines of authority" discussed by Defendants in their Memorandum.

### A. The Two-Tiered Approach to Determine Whether Employees Are Similarly Situated

Defendants' memorandum discusses two purported "lines of authority regarding the proper analysis to be applied when a plaintiff seeks [to give] notice in an FLSA collective action." Def. Opp. at 4. One such line – the most widely accepted and better reasoned – is represented by the cases cited in Plaintiff's original motion. *See Reeves v. Alliant Techsystems, Inc.*, 77 F.Supp.2d 242, 246-247 (D.R.I. 1999); *Lusardi v. Xerox Corp.*, 122 F.R.D. 351, 361 (D.N.J. 1987); *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678-79 (D.Colo.1997); *Brooks v. Bellsouth Telecom. Inc.*, 164 F.R.D. 561, 568

---

[1] *See Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 262 (S.D.N.Y. 1997)(authorizing expedited notice where plaintiffs not only "made substantial allegations of a uniform, widespread policy, but these allegations are factually supported by defendant's own admissions . . .").

3

(N.D.Ala. 1995), *aff'd* 114 F.3d 1202 (11th Cir. 1997); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 445 (N.D.Ill. 1982); *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995); *Krueger v. New York Telephone Co.*, No. 93 Civ. 0178, No. 93 Civ. 0179, 1993 U.S. Dist. LEXIS 9988 at *6-7 (S.D.N.Y. July 21, 1993).

Under this approach, there are two points at which a court engages in an analysis of whether there are other "similarly situated" employees. *Id.* The first point is when the court considers whether to send notice to potential class members – the question facing this Court now. The *Reeves* court explained that "plaintiffs can meet this burden by simply alleging 'that the putative class members were together the victims of a single decision, policy, or plan' that violated the law." *Id.* at 247 (citations omitted). The Court noted that the standard is "fairly lenient" as the court generally has only the pleadings and any affidavits that have been submitted from which to make its decision, and, further, that the Court typically "certifies" the class conditionally – and hence, authorizes notice. *Id.* at 246-247.

The court then revisits the question of whether the other employees are similarly situated after discovery is complete. *Id.* at 247. If the court finds that the employees are not similarly situated at that time, it can "decertify" the class and dismiss the opt-in plaintiffs without prejudice. At that stage in the litigation, the court considers (1) the disparate factual and employment settings of the various plaintiffs; (2) whether there are

defenses which would be individual to each plaintiff; and, (3) other fairness and procedural considerations. *Id.* at 247. (citations omitted).[2]

There can be no question that Plaintiff has met the "lenient" burden needed for the Court to authorize notice. The record before the Court clearly indicates that Defendants have a policy of treating a discrete class of Crew Coordinators as exempt from the FLSA overtime requirements. Further, both Defendants and Plaintiff have estimated that there are approximately 50 current employees, including Plaintiff, who were subjected to the Defendants' policy.[3] Moreover, Plaintiff has submitted a list of names of those Crew Coordinators that his supervisor has informed him were not paid overtime. Plaintiff has clearly made the preliminary showing that there are other similarly situated persons who are potential class members, and consequently, this Court should authorize notice to all employees (both former and current) that were subjected to Defendants' policy during the relevant time period.

---

[2] This case involves only persons who worked as Crew Coordinators for the Defendants. Each of these potential plaintiffs was treated as exempt from the overtime requirements of FLSA. Defendants have not identified any aspect of Plaintiff's employment setting which was materially different from the other Crew Coordinators who were also not paid overtime. Nor have Defendants identified any defenses unique to any potential plaintiff. Defendants appear to rest entirely on the argument that these employees were exempt from the requirements of the FLSA, making this a classic case for a FLSA collective action. *See Dagget v. Voeller*, No. CV 95-421-ST, 1996 U.S. Dist. LEXIS 22465 at 19, 20 (D.Or. 1996)(FLSA collective actions generally "involve one specific employment policy" dealing with whether a "class of employees is entitled to overtime wages depend[ing] upon whether an exemption applies . . .").

[3] There is no evidence in the record as to how many former employees would also be potential class members.

5

Defendants do not seriously contest that Plaintiff has carried his burden under the foregoing approach. Without referencing the uncontested facts of record discussed above, Defendants simply argue that Plaintiff did not make the requisite showing because he failed to (1) identify other potential plaintiffs, (2) submit affidavits of other such potential plaintiffs, and (3) identify a widespread discriminatory plan. These arguments are not only distortions of the record before the Court, but are simply not prerequisites to the Court's authorization of notice.

First, Defendants themselves have identified other potential plaintiffs by their admission that there are other Crew Coordinators (approximately 50) who, like Plaintiff, are treated as exempt from overtime requirements. While Plaintiff may not have produced the names of all these employees – as Defendants are unwilling to provide this information – the Plaintiff has submitted a list of persons that he has been told by his supervisor are not paid overtime. While this is most likely not an exhaustive list, coupled with the Defendants' own admissions, it certainly establishes that there are other potential plaintiffs who are similarly situated.

Next, Defendants argue that Plaintiff should submit affidavits of these other employees to verify his allegations. First, such affidavits are unnecessary as Defendants have admitted that there exists a class of Crew Coordinators to whom they do not pay overtime. No further corroboration is necessary; the existence of a policy common to a class of Crew Coordinators is established in the record. Second, Defendants oppose

Plaintiffs' contact with any of its employees, contending it is a violation of the ethical rules. Regardless of the merits of this argument, Defendants cannot have their cake and eat it too – demanding Plaintiff not contact with other Crew Coordinators while at the same time demanding that he acquire sworn affidavits from such persons verifying allegations that the Defendants concede to be true. The argument is nonsense.

Finally, Defendants call upon Plaintiff to identify a widespread discriminatory plan. This only highlights Defendants' inappropriate reliance on age discrimination precedent where the existence of a discriminatory policy common to a discrete class of employees is in doubt.[4] This case is not about unveiling a hidden bias or policy against

---

[4] The vast majority of the cases cited in Defendants' memorandum are age discrimination cases where the court refused to authorize notice because of insufficient evidence of a company-wide policy to discriminate on the basis of age. As policies to discriminate on the basis of age (unlike overtime compensation policies) are generally not written down or admitted to exist, plaintiffs in these cases face a more difficult factual challenge in attempting to show the existence of such policies affecting a similarly situated class of employees. *See Mooney v. Aramco Services Corp.*, 54 F.3d 1207, 1216 (5th Cir. 1995)(age discrimination plaintiffs not similarly situated where each was in a vastly disparate employment situation, performing different jobs at different locations and subject to different adverse job actions); *Dione v. The Ground Round, Inc.*, No. 93-11083, slip op. at 9 (D.Mass. July 6, 1994)(doubting "that a 'company-wide' policy [to discriminate on the basis of age] can be inferred from the hearsay account of an isolated statement by one corporate executive."); *Basch v. The Ground Round, Inc.*, 139 F.3d 6, 8 (1st Cir. 1998)(discussing Dione with approval because the age discrimination plaintiffs "worked in different states, for various supervisors, at different job levels, in different divisions and departments, [and] were terminated for purportedly different reasons. . ."); *Klegerman v. F.G. Apparel, Inc.*, No. 85 C 7887, 1986 U.S. Dist. LEXIS 29447 at *18 (N.D.Ill. Feb. 10, 1986)(refusing to authorize notice to "disparate potential [age discrimination] claimants" whose claims would be "factually distinct" from the plaintiff's claim); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-267 (D.Minn.

(continued...)

older employees, but involves the legality of an overtime compensation policy that both Plaintiff and Defendants agree is in place. Nevertheless, one age discrimination case upon which Defendants rely does present a factually similar scenario to the case at hand, and, in that case, the Court did authorize notice. *See Schwed v. McMaster*, 159 F.R.D. 373 (N.D.N.Y. 1995)(age discrimination plaintiffs identified a policy for ranking employees for purposes of termination, which defendant conceded it used, and court approved notice to those persons who were subjected to the ranking policy).

Clearly, Plaintiff has met the burden required in *Reeves* and this Court should authorize expedited notice to all potential class members so they may decide whether to proceed collectively and take advantage of the pooling of their resources – a right which FLSA guarantees.

### B. The Rule 23 Approach to Determine Whether Employees are Similarly Situated

---

[4] (...continued)
1991)(Five individual age discrimination plaintiffs working for two different companies that allegedly operated jointly from one corporate headquarters did not proffer sufficient evidence to send notice to all potential claimants when allegations dealt only with their own cases and their observations that some older workers had been terminated and replaced by younger workers – especially when defendant offered evidence "tending to show that no widespread practice of discrimination exists at the defendant companies."); *D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889, 894 (D.Md. 1995)(age discrimination plaintiff failed to meet "modest factual showing" for court authorized notice because he failed to point "to any company plan or policy to target older employees for termination."); *Shushan v. University of Colorado*, 132 F.R.D. 263, 268 (D.Co. 1990)(allegations of age discrimination in the complaint alone are insufficient to satisfy factual showing that there is a "definable, manageable class and that [plaintiffs] are proper representatives of the class.").

The second purported "line of authority," which Defendants urge this Court to follow, measures the Plaintiff's proffer against the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. Defendants cite three cases which discuss this approach.[5] Two of these cases (one of which is unpublished) are not on point as they involved age discrimination claims. *Id.* The third, which was a FLSA case, did not decide which approach was appropriate, but merely noted that the Court doubted that Rule 23 was wholly irrelevant. *Id.*

The Rule 23 approach has been largely rejected by subsequent case law and is inconsistent with "the prevailing view among federal courts. . ." *Hoffman*, 982 F.Supp. at 263, n.17 (collecting cases rejecting this approach, largely because the due process concerns for protecting absent class members are not present given that one must affirmatively opt-in to be bound by the judgment); *see also Dagget v. Voeller*, No. 95-421-ST, 1996 U.S. Dist. LEXIS 22465 at *15 (D.Or., April 18, 1996)(holding Rule 23 does not apply to FLSA collective actions as many of its "protections are not necessary . . . given the 'opt in' requirement.") ; *Jackson v. New York Telephone Co.*, 163 F.RD. 429, 432 (S.D.N.Y. 1995)("application of the Rule 23 requirements to the question of whether potential plaintiffs are similarly situated is at odds with the well-reasoned conclusions of

---

[5] *See Dionne v. The Ground Round, Inc.*, No. 93-11083, slip op. at 5 (D.Mass. July 6, 1994); *Shushan v. University of Colorado*, 132 F.R.D. 263, 264-267 (D.Colo. 1990); *Burns v. Village of Wauconda*, No. 99 C 0800, 1999 U.S. Dist. LEXIS 11230 at *7-8 (N.D.Ill. July 14, 1999).

other courts, the remedial purposes of ADEA, and the prompt and efficient resolution of similar claims."); *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 306-307 (N.D.Cal. 1991)(rejecting Rule 23's requirements as both frustrating the remedial scheme of the collective action provisions and unnecessary given both the similarly situated requirement and the opt-in procedure); and, *Jackson v. Go-Tane Services, Inc.*, No. 99 C 5686, 2000 U.S. Dist LEXIS 12627 at *9 (August 21, 2000)(referring to the Rule 23 test as "irrelevant and unnecessary. . .").

As pointed out by these cases, the Rule 23 analysis is logically unnecessary given the procedural differences between collective actions – where individual plaintiffs choose whether to join the suit and be bound by the judgment– and Rule 23 class actions where the Court must look after the interests of absent class members. Requiring a Rule 23 showing at the early stages of litigation would frustrate the remedial scheme of FLSA and eviscerate the benefits to the parties and the judicial system identified by the Supreme Court in *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)(noting that the process "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

Nonetheless, Plaintiff has also made the preliminary showing required by *Shushan*. First, both Defendants and Plaintiff agree that there are at least 50 Crew Coordinators

who were not paid overtime in accordance with Defendants' policy that they are exempt from FLSA. This satisfies the numerosity requirement.

Second, the factual and legal issues surrounding the legality of the Defendants' policy of not paying overtime are common questions for the entire class. This satisfies the commonality requirement.

Third, Plaintiff's claims for failure to pay overtime would be essentially identical to any other Crew Coordinators' claims – as all were subject to the same policy. This satisfies the typicality requirement.[6]

Finally, there is no reason why Plaintiff will not adequately represent the class. Defendants raise only two objections regarding the adequacy requirement: (1) that Plaintiff has been on disability leave and is currently not working as a Crew Coordinator, and (2) that Plaintiff has solicited consents prematurely. Defendants fail to explain why

---

[6] Defendants argue that there were different payroll practices applicable to the Crew Coordinators, and, therefore, Plaintiff has failed to make the preliminary showing of either commonality or typicality. Defendants' claim that the payroll policies applicable to Crew Coordinators vary substantially is entirely undermined by Russell's own affidavit which makes clear that there are only two payroll policies with respect to Crew Coordinators: (1) some are treated as exempt and not paid overtime (such as the Plaintiff); and (2) some are treated as non-exempt and paid on an hourly basis, including overtime. Russell Affidavit, ¶5. In a situation such as this, where the evidence clearly indicates that one group of employees was subjected to a single, allegedly unlawful policy, the Court should authorize notice to those persons who were subject to that policy, even though other employees with the same job may not have been treated similarly. *See Belcher v. Shoney's, Inc.*, 927 F.Supp. 249 (M.D.Tenn. 1996)(reducing the scope of the authorized notice to those persons whom the evidence indicated were subjected to the defendant's policy of not paying overtime); *see also Schwed*, 159 F.R.D. 373 (same in age discrimination context).

Plaintiff's disability leave has any bearing on his ability to represent the other class members. Moreover, eventually all Crew Coordinators will not be current employees of the Defendants, as they are shutting down the entire store reset business due to unprofitability. (Russell Affidavit, ¶8). Second, as explained in the Reply Affidavit of Mr. Urmy, Plaintiff has not solicited consents. Plaintiff's attempt to facilitate prompt notice to all potential class members so that they may protect their claims from the expiration of the statute of limitations only demonstrates that he will adequately and vigorously represent the other class members. While Plaintiff need not make these showings in order for the Court to authorize notice, there is no doubt that the record reflects that he has done so.

Therefore, regardless of the approach this Court ultimately chooses to adopt, Plaintiff has met his burden of showing the existence of a similarly situated group of persons. Notice to those persons is appropriate under either of the two "lines of authority" discussed by defendants in their Memorandum.

### III. Plaintiff Did Not Engage In Any Inappropriate Contact

Notwithstanding Defendants' claims of "arguable ethical violations" and unauthorized solicitations of consent forms, Plaintiff has not engaged in any inappropriate contact with the agents of the Defendants. As Plaintiff's email clearly indicates, he merely requested the names and addresses of his fellow Crew Coordinators. He did not request that these persons sign consent forms, nor did he even identify the subject matter

of the present lawsuit. To characterize this contact as unauthorized solicitations of consents or as a violation of the ethical rules prohibiting an attorney's *ex parte* contact with the Defendants' agents is ludicrous.

IV. **Defendant's Failure to Offer More Substantive Comment on the Form of Notice Should Not Prejudice Absent Class Members' Rights to be Notified of this Collective Action**

In rejecting Plaintiff's proposed notice to the class, Defendants offer general criticisms without any concrete alternatives. Plaintiff is more than willing to work with the Court and Defendants to agree upon a proposed form of notice. Plaintiff's only concern is that absent an expedited notice process to persons who may be unaware of their ability to enforce their rights, potential class members' claims will "continue to die daily." *Hoffman*, 98 F.Supp. at 260 (citation and internal quotation marks omitted). Plaintiff is willing to come to the hearing with alternative proposals for the notice and consent form, but would ask the Court to set a rigid time-table for resolving any disputes and to toll the statute of limitations for the time it takes to resolve these issues – assuming Defendants are unwilling to stipulate to a tolling of the statute of limitations.

V. **Conclusion**

For the reasons stated in Plaintiff's motion to order the Defendants to produce the names of all potential class members and to authorize Plaintiff's counsel to advise these persons of the pendency of this action, and for the reasons stated above, Plaintiff respectfully requests that this Court grant Plaintiff's motion.

Respectfully submitted by the attorneys for the Plaintiff and the Class,

_____

Thomas V. Urmy, Jr. (BBO# 506620)
Christine E. Morin (BBO# 600237)
Todd Heyman (BBO # 643804)
Shapiro Haber & Urmy LLP
75 State Street
Boston, MA 02109
(617) 439-3939

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL-~~HAND~~-FAX ON 1/23/01